[No. 35372.   Department One.   November 17; 1960.] ·

RUTH BENNETT, *Appellant,* v. WILLIAM R. MCCREADY, *Respondent.*

DORIS A. RICE, *Appellant,* v. WILLIAM R. MCCREADY, *Respondent.*

THOMAS E. EWING *et al., Appellants,* v. WILLIAM R. MC-CREADY, *Respondent.*[1]

*Halverson, Applegate & McDonald* and *Walter E. Weeks, Jr.,* for appellants.

*Nashem & Dobbs,* for respondent.

[1]Reported in 356 P. (2d) 712.

MALLERY, J.—These three damage actions arose out of a rear-end collision between two automobiles, which occurred on Snoqualmie Pass near the west end of Lake Keechelus on November 16, 1956. They were consolidated for trial and upon appeal.

The plaintiffs were Doris A. Rice, who owned the Anglia automobile in which she and the other plaintiffs were riding at the time of the accident. The automobile was being operated by plaintiff Ruth Bennett. They were proceeding westerly toward Seattle from Yakima at about 3:30 p. m. It was snowing. Visibility was only fair. The highway was covered with compact ice and snow and was very slippery, but the highway patrol had not required the use of chains.

An accident had occurred on the highway, and a highway patrolman was stopping all of the west-bound traffic so that the highway could be cleared. As the plaintiffs approached the automobiles that were stopped in their lane of traffic, the plaintiff driver saw the highway patrolman and his signal and successfully slowed the automobile down to take its place in the line of automobiles. Just as it stopped, their automobile was struck violently in the rear by the Chrysler automobile driven by the defendant. According to his testimony, he had been driving at about fifteen to twenty miles an hour and at a distance of about one hundred feet behind the plaintiffs. The impact produced the injuries here in question.

The jury returned a verdict for the defendant in all three cases, and the plaintiffs appeal.

The respondent took the position at the trial that he had been confronted with a sudden emergency which made it impossible for him to stop before colliding with appellants' automobile. His testimony was to the effect that the appellants had gone around a sharp curve, which hid them from his view until he also had gone around it, when he then suddenly discovered them stopped at a distance of only sixty to seventy feet. This, he asserted, was too short a distance to permit him to stop under the prevailing slippery conditions of the highway.

Upon this theory, the respondent sought and procured the giving of instruction No. 15, which reads:

"An automobile driver who without negligence on his part, is suddenly placed in a position of peril and compelled to act instantly to avoid injury is not guilty of negligence if he makes such a choice as a reasonably prudent and careful person placed in such a position might make, even though he did not make the wisest choice."

The factual basis upon which the instruction was sought was illustrated by the respondent in exhibit No. 3, which showed a ninety-seven degree turn in the highway. This exhibit had been drawn by the respondent for illustration purposes only and represented his best recollection of the curve. Exhibit No. 7 is an official highway map of the place in question and had a curve of thirty-nine degrees.

Without detailing all of the mathematical arguments on both sides, we are able to say as a positive mathematical conclusion that a forward automobile would not be obscured from a following car at this curve at a distance of less than three hundred feet.

It is a well-established rule that when "physical facts are uncontroverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts, and therefore cannot differ." *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848, and cases cited.

Accordingly, the respondent cannot be heard to say that the appellants' automobile disappeared around a curve at a distance of less than one hundred feet when an accurate map of the highway establishes three hundred feet as the minimum distance required for the disappearance of a vehicle around the turn in question.

The appellants assign the giving of instruction No. 15 as error.

We find that the assignment is well taken. The instruction would have been proper if the jury had had the privilege of believing the respondent's version of the facts; but, since we find to the contrary, the emergency doctrine

was not available to the respondent, and it was error for the court to give the instruction.

■ The difference between an emergency and an inherently dangerous situation which warrants giving an instruction as to unavoidable accidents is well illustrated by this case. The slippery condition of the highway created a situation in which certain kinds of accidents could occur without fault due to the inherent dangers of driving upon it.

We think, therefore, that appellants' assignment of error directed to the giving of instruction No. 16, which instructed upon unavoidable accident, is not well taken. A jury, under proper instructions, might very well have found that the dangerous condition of the highway caused an unavoidable accident. In view of the fact, however, that all other automobiles at that time and place had succeeded in stopping pursuant to the highway patrolman's direction, it is quite possible that the jury would not have exculpated the respondent but for the emergency instruction that should not have been given.

The judgment is reversed, and the cause remanded with directions to grant a new trial. Costs will abide the final judgment.

WEAVER, C. J., DONWORTH, FOSTER, and HUNTER, JJ., concur.

---

December 22, 1960. Petition for rehearing denied.