[No. 38858.    Department Two.    September 21, 1967.]

RAY C. VANDERHOFF et al., *Respondents*, v. JAMES F. FITZ-GERALD et al., *Appellants.**

*Hugh R. McGough,* for appellants.

*Durkan & Durkan,* by *John O'Neill Durkan,* for respondents.

DENNEY, J.†—About 6:15 p.m. on January 5, 1962, an automobile being driven by plaintiff Marian M. Vanderhoff was struck from the rear by an automobile driven by defendant James F. Fitzgerald, a few car lengths inside the west portal of the tunnel just west of the Lake Washington

*Reported in 431 P.2d 969.

†Judge Denney is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

bridge on highway 10 in Seattle. The night was dark, rain was falling and traffic was heavy, it being a Friday evening. Mrs. Vanderhoff was driving in the middle of three lanes being used at the time by eastbound traffic. As she approached the portal of the tunnel she noticed the traffic ahead was slowing and that she must stop. She did so inside the tunnel immediately behind a car which had stopped along with other cars in the tunnel. After a few seconds her car was struck a violent blow by the Fitzgerald car which was immediately behind her.

Mr. Fitzgerald testified that he was following the flow of traffic and was driving about 50 feet behind the Vanderhoff vehicle at a speed of 35 to 40 miles per hour; that he noticed the cars ahead were beginning to stop; and that the car in front had stopped in the tunnel. He applied his brakes in a normal manner. The brakes took hold but the car did not stop, instead it "skied literally as though I was on ice." Mr. Fitzgerald took his foot off the brake for an instant and then reapplied it in order to get traction. The tires then took hold but not in time to avoid a collision. Dorothy Fitzgerald was a passenger in her husband's car and testified to the same effect, although she thought her husband's estimate of speed was too high. The maximum speed limit at the point of collision was 40 miles per hour.

Mr. Fitzgerald further testified that he examined the conditions of the road immediately after the accident and observed that water cascaded off the face of the tunnel portal and flowed in a sheet across the road to a drain on the north side of the road. He said that immediately inside the tunnel, where water had been carried by the tires of vehicles, the roadway appeared to be covered by an oil film creating an extremely slippery condition.

Mrs. Vanderhoff was taken to Providence Hospital after the accident. She sustained injuries to her mouth, teeth, and a cervical and dorsal sprain. A urinalysis disclosed red blood cells which continued to appear on subsequent examinations so her attending physician, Dr. Sauntry, referred her to an internist, Dr. Kohler. He conducted further exam-

inations, and when the condition did not improve, referred Mrs. Vanderhoff to Dr. Julian Ansell, chairman of the Department of Urology at the University of Washington Medical School. In August 1962, Dr. Ansell found a tumor in the bladder. The tumor was removed, but other tumors appeared which were diagnosed as cancerous. These were also removed in surgical procedures performed on several occasions in 1963, 1964 and 1965. Finally, the entire bladder was removed in September 1965. Medical and hospital expenses in excess of $8,000 were incurred. Mr. and Mrs. Vanderhoff commenced this action contending Mr. Fitzgerald's alleged negligence caused the injuries to mouth, teeth and upper back, and in addition, caused a previously existing cancerous condition to be accelerated. The Fitzgeralds denied negligence and particularly denied that the accident caused or contributed to Mrs. Vanderhoff's cancerous condition.

The trial judge directed a verdict against defendants Fitzgerald on the issue of liability and submitted the question of damages to a jury which rendered a verdict against defendants in the sum of $10,000. Judgment was entered on the verdict. Defendants Fitzgerald appeal.[1]

■ We are committed to the doctrine that where the driver of a vehicle is following another vehicle, the primary duty of avoiding a collision rests upon the following driver and in the absence of an emergency or unusual conditions, the following driver is negligent if he runs into the car ahead. *Tackett v. Milburn,* 36 Wn.2d 349, 218 P.2d 298 (1950); *Miller v. Cody,* 41 Wn.2d 775, 252 P.2d 303 (1953); *Flaks v. McCurdy,* 64 Wn.2d 49, 390 P.2d 545 (1964); *Izett v. Walker,* 67 Wn.2d 903, 410 P.2d 802 (1966); *Felder v. Tacoma,* 68 Wn.2d 726, 415 P.2d 496 (1966). While the following driver has the primary duty of avoiding an accident he is not necessarily guilty of negligence as a matter of law simply because he collides with the vehicle in front of him. *James v. Niebuhr,* 63 Wn.2d 800, 389 P.2d

---

[1]Mrs. Vanderhoff died after the entry of judgment and Ray C. Vanderhoff, as executor of the estate of Marian W. Vanderhoff, has been substituted.

287 (1964); *Trudeau v. Snohomish Auto Freight Co.*, 1 Wn.2d 574, 96 P.2d 599 (1939). A prima facie showing of negligence may be overcome by evidence that some emergency or unusual condition not caused or contributed to by the following driver caused the collision, in which event the liability of the following driver becomes a jury question.

Appellants contend that the evidence made their liability a fact question for the jury and that the trial court erroneously found them liable as a matter of law. We agree. The extremely slippery condition of the roadway, as described by appellants, would justify a finding that an unusual condition existed which prevented appellants from stopping in the exercise of reasonable care before striking respondents' vehicle. Mr. Fitzgerald testified that the brakes on his vehicle were in good operating condition, his tires were in excellent condition and that if he had secured normal traction on the wet pavement he could have stopped before striking respondents' vehicle. It was for the jury to determine whether or not this was an unusual condition which absolved appellants from negligence in striking respondents' car. *Flaks v. McCurdy, supra; Rickert v. Geppert,* 64 Wn.2d 350, 391 P.2d 964 (1964).

The trial court was of the opinion that speed and driving too close were the causes of the collision and that Mr. Fitzgerald should have driven in such a manner as to be able to stop on the wet, slippery pavement. Reasonable minds could differ on whether or not one driving with the flow of heavy traffic at 35 to 40 miles per hour on a wet pavement 50 feet from the preceding car was negligent, particularly when the driver asserts he could stop his car under normal circumstances under such conditions.

Because of appellants' testimony relative to the unusually slippery condition of the roadway, it was error to resolve the issue of liability as a matter of law.

In view of the fact that the case is being remanded for a new trial, appellants' other assignments of error will be discussed.

It is contended that it was error to admit statements relating to hospital and medical expenses covering Mrs. Vanderhoff's numerous hospitalizations and surgical procedures to combat the recurring growth in the bladder because there was no showing of causal connection between the accident and the necessity of such treatments. Dr. John P. Sauntry testified that in his opinion the first tumor was benign and that the normal life expectancy with such benign tumor was 5 to 20 years. He also was of the opinion that the accident accelerated the growth of the tumor. Another medical witness testified that he believed the first tumor to be benign at the time of the first surgical procedure and that the normal life expectancy with such condition was 5 to 20 years. It is undisputed that the cancerous condition advanced very rapidly after being discovered, and her life expectancy at the time time of trial was less than a year. This testimony together with the fact that Mrs. Vanderhoff enjoyed good health until the time of the accident would permit a jury to find that the accident accelerated the cancerous condition to the extent of necessitating all the medical and hospital services, and that such expenses would not have been incurred but for the accident.

It is true that where there is evidence of injuries or loss resulting from various causes, for some of which a defendant is not liable, there must be proof from which the jury can determine the amount of injury or loss caused by the defendant. *Wappenstein v. Schrepel,* 19 Wn.2d 371, 142, P.2d 897 (1943). However, the evidence here permits the jury to find that all the expenses were made necessary by the accident.

■ Granting that there was sufficient evidence to warrant a finding that all expenses might be attributed to the accident, appellant contends that a cautionary instruction nevertheless should have been given. Whether or not the bladder cancer had any causal connection with the collision was one of the principal issues in the case. A substantial portion of the record deals with testimony on this subject.

Several physicians testified that in their opinion the accident did not cause or accelerate the development of the bladder cancer. Appellants, therefore, were entitled to a specific instruction on this issue and were entitled to have the jury told that mere possibility is not sufficient to warrant a finding of causal connection. The stock instruction defining proximate cause does not cover the matter adequately. Under these circumstances it would be well on retrial to give an instruction pointing out that evidence of causal relationship must go beyond speculation and conjecture and must show that causal connection is probable rather than possible.

■    Appellants next contend that error was committed in allowing Dr. Sauntry to testify that Dr. Kohler had initially advised him that the presence of blood cells in the urine was caused by a disease known as lupus erythematosis. Dr. Kohler was later called as a witness and testified at length on his diagnosis. We find, therefore, no prejudice in the admission of the testimony of Dr. Sauntry, even though such may have contained hearsay. Appellants further contend that Dr. Kohler eventually discarded the diagnosis of lupus erythematosis as incorrect and thus made Dr. Sauntry's opinion baseless and of no effect. Dr. Sauntry's opinion was based on a number of considerations including initial observation and treatment. His reliance on any particular factor was for the jury to consider in determining the weight to be given his testimony.

Appellants also attacked Dr. Sauntry's qualifications to express an opinion on acceleration of cancer and its cause. Dr. Sauntry displayed some modesty in estimating his own qualifications as a cancer expert, but he is a licensed physician with considerable experience in cancer research and he displayed familiarity with the disease. He was an attending physician. He based his opinion on history, his examination of the patient, hospital reports, reports of consulting physicians and laboratory reports. We find no error in permitting him to express an opinion regarding Mrs. Vanderhoff's condition and its cause.

We have considered the additional assignments of error and find them without merit, or of such a nature that they will not arise on retrial. For error in withdrawing the issue of liability from the jury, the judgment is reversed with instructions to grant a new trial.

FINLEY, C. J., DONWORTH, HAMILTON, and NEILL, JJ., concur.

November 21, 1967. Petition for rehearing denied.